IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LESTER LEE FLETCHER** | * | |
| | * | |
| **Petitioner,** | * | |
| | * | |
| **v.** | * | **Civil No. PJM 08-1720** |
| | * | **(Criminal No. PJM 05-179)** |
| **UNITED STATES** | * | |
| | * | |
| **Respondent.** | * | |

<u>OPINION</u>

On May 8, 2006, following a jury trial, Lester Lee Fletcher was convicted of conspiring to distribute and possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 (2000) ("Count One"); possession with intent to distribute cocaine or cocaine base, in violation of 18 U.S.C. § 2 (2000) and 21 U.S.C. § 841 (2000); conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (2000); and money laundering, in violation of 18 U.S.C. §§ 2 and 19569(a)(1)(B)(i) (2000). He was sentenced to life in prison on Count One, 120 months on each possession count, and 240 months on each remaining count, all to run concurrently. On appeal, the Fourth Circuit affirmed the conviction and sentence. <u>United States v. Fletcher</u>, 237 Fed. Appx. 805 (4th Cir. 2007). On July 1, 2008, Fletcher moved to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, contending that he received ineffective assistance from his trial and appellate counsel in violation of his Sixth Amendment rights.

Having considered Fletcher's Motion and the Government's Response, the Court **DENIES** the Motion to Vacate, Set Aside, or Correct his Sentence.

**I.**

As established at trial, between approximately January 2002 and April 2005, Fletcher

conspired with others to possess and distribute 5 or more kilograms of a mixture containing cocaine, and 50 or more grams of a mixture containing crack cocaine.  In furtherance of the conspiracy, he purchased a cumulative total of over 150 kilograms of cocaine from suppliers in Prince George's County, personally cooking at least some of that cocaine into crack cocaine for distribution through two "crack houses" he operated.  The Government introduced evidence, including bank records and the testimony of Brenda Fletcher, Fletcher's wife, demonstrating that he engaged in money laundering transactions.

At trial and on appeal Fletcher was represented by retained counsel, who died shortly after filing Fletcher's appeal and prior to the Fourth Circuit's disposition of the appeal.

## II.

In his Motion, Fletcher submits that his Sixth Amendment right to counsel was compromised by the ineffective assistance of counsel at trial and on appeal.  Specifically, he claims that trial counsel was ineffective for failing to (1) interview and investigate government witnesses; (2) investigate defense witnesses to develop a theory of defense; (3) permit Fletcher to testify in his own defense; (4) object to Fletcher's absence during a "critical stage" of the proceedings; (5) impeach the Government's witnesses; and (6) object to hearsay evidence at trial. Fletcher argues that appellate counsel was similarly ineffective for neglecting to raise the same hearsay objection on direct appeal.

## III.

Whether defense counsel was constitutionally ineffective is governed by the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984).  An individual claiming ineffective assistance must demonstrate that (1) "counsel's performance was deficient," and (2)

2

"the deficient performance prejudiced the defense." Id. at 687. Both the cause and effect must be proved to obtain relief, and the defendant bears the burden of proof as to both prongs. Id. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); see, e.g., Booth-El v. Nuth, 288 F.3d 571, 583 (4th Cir. 2002) (denying an ineffective assistance of counsel claim when defendant failed to prove how counsel's conduct prejudiced defendant). Counsel's performance will be deemed deficient when it is unreasonable or "not 'within the range of competence demanded of attorneys in criminal cases.'" Strickland, 466 U.S. at 687 (quoting McMann v. Richardson, 379 U.S. 759, 771 (1970)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689; see Carter v. Lee, 283 F.3d 240, 248-49 (4th Cir. 2002) (noting a court does not "grade" the counsel's trial performance). Indeed, there is a "strong presumption" trial counsel's conduct and strategy falls "within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 689; see Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002) (reiterating that a court should avoid second guessing trial counsel's performance).

A criminal defendant is prejudiced by counsel's conduct when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also id. at 693 (noting that errors are not prejudicial if they only have "some conceivable effect on the outcome of the proceeding").

3

However, the mere possibility that the outcome would have been different is not sufficient. <u>See</u> <u>Hoots v. Allsbrook</u>, 785 F.2d 1214, 1220 (4th Cir. 1986).

The Court reviews Fletcher's claims of ineffective assistance of counsel against these standards.

**A.**

Fletcher first claims that trial counsel was constitutionally deficient for failing to interview and investigate the following government witnesses, who were also Fletcher's co-defendants: (1) Brenda Fletcher; (2) David Myers; (3) Fred Mitchell; (4) Kelly Hall; (5) Dawn McDonald; (6) Karen Richman; (7) Lawrence Young; (8) Donna Fanlkner; and (9) Thomas Swinney.

Each of these witnesses testified during the trial. Therefore, defense counsel unquestionably had an opportunity to cross-examine them during which he could and did attempt to exploit gaps and inconsistencies in their testimony. Second, even assuming counsel failed to investigate and interview these witnesses, the Sixth Amendment "does not always compel counsel to undertake interviews and meetings with potential witnesses where counsel is familiar with the substance of their testimony." <u>Huffington v. North</u>, 140 F.3d 572, 580 (4th Cir. 1998); <u>see</u> <u>LaGrand v. Stewart</u>, 133 F.3d 1253, 1274 (9th Cir. 1998); <u>Eggleston v. United States</u>, 798 F.2d 374, 376 (9th Cir. 1986). Here, there is ample evidence that defense counsel was in possession of such information. The Government provided the witnesses' plea agreements to defense counsel in advance of trial, including the factual summaries of the co-defendant's own involvement in the illicit activity. Additionally, counsel had access to his client and his client's knowledge of the co-defendants' involvement. In this, defense counsel was sufficiently

4

informed, and any failure on his part to have investigated further does not rise to the level of unreasonable.

Finally, even if counsel's failure to investigate and interview these nine witnesses might be deemed to fall below an objective standard of reasonableness, Fletcher's ineffective assistance claim would still fail because he has not shown that such omissions actually prejudiced him. See, e.g., Booth-El, 288 F.3d at 583-84 (affirming the denial of an ineffective assistance of counsel claim when defendant could not demonstrate prejudicial effect of trial counsel's faulty assistance). The evidence of Fletcher's guilt was overwhelming and, in any case, he supplies no additional evidence that his counsel might have discovered through further investigation or interviews. Absent any showing demonstrating prejudice, the Court's confidence in the trial verdict is not undermined.

## B.

Fletcher next claims that trial counsel was ineffective for failing to "develop a theory of defense" through "interview[ing] or investigat[ing] defense witnesses . . . ." Specifically, he contends that counsel's failure to call co-defendants to testify on his behalf deprived him of "highly credible impeachment information[]," because these witnesses presumably would have testified as to his innocence.[1] Yet, Fletcher says nothing about what these witnesses might actually have said.

---

[1] Fletcher is not clear as to which potential defense witnesses counsel failed to interview, but he does note that the Court denied his request for the issuance of writs to compel Claude Young, Sterling Jennings, John Fletcher, Wolfgang Gadson and Karen Richard to testify. The Fourth Circuit Court of Appeals rejected Fletcher's appeal of the denial of these writs, since the Government stipulated to the facts Fletcher sought to prove with those witnesses' testimonies. Fletcher, 237 Fed. Appx. at 807.

In any event, Fletcher fails to demonstrate their testimony would have been "of a sufficiently high probative force probably to generate saving doubt." Washington v. Murray, 952 F.2d 1472, 1479 (4th Cir. 1991).  Given the large body of evidence supporting Fletcher's conviction, Fletcher's unsupported claim that a potential witness might have demonstrated his innocence or impeached a Government witness cannot satisfy this standard.  See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (denying an ineffective assistance of counsel claim because conclusory allegations that the uncalled witness would have denied the charges or impeached a witness "are insufficient to establish the requisite prejudice under Strickland").

## C.

Fletcher further asserts that counsel's representation was constitutionally deficient because counsel denied him the chance to testify, or the "right to tell his side of the story." Fletcher claims counsel would not let him testify because of an "actual conflict of interest[]" whereby counsel "[made] a choice advancing his own interests to the detriment of the defendant['s] . . . ." Fletcher  never expounds, however,  upon the nature of the supposed "actual conflict."  Such conclusory assertions on their face cannot suffice to support an ineffective assistance of counsel claim.

That noted, the Government correctly points out that Fletcher's attempt to revisit the decision to testify garners no support from the Sixth Amendment.  "[T]he advice provided by a criminal defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" Carter, 283 F.3d at 249 (citing Hutchins v. Garrison, 724, F.2d 1425, 1436 (4th Cir. 1983); see also Hunt, 291 F.3d at 289.  To hold otherwise would encourage the Court to enter the forbidden realm of second

guessing the strategic decisions of trial counsel.

In any case, Fletcher's evidence of this point consists only of his own uncorroborated conclusions, which, standing alone, do not establish that he was "deprived" of the right to testify. See Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991) ("[B]arebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him."); Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987) (affirming denial of defendant's habeas petition without an evidentiary hearing when defendant alleged, "in conclusory fashion, that his attorney refused to allow him to 'testify in [his] own behalf'").

Trial counsel is deceased, it is true, and is thus unavailable to testify as to the decision not to place Fletcher on the stand. Nonetheless, there are reasonable justifications as to why counsel may have cautioned Fletcher not to testify. Had Fletcher testified, it is virtually certain that the Government would have introduced his prior conviction for possession with intent to distribute drugs to impeach him. Fletcher's credibility was shaky as well. When he previously testified at a motions hearing during trial that his co-defendants had written identical letters attesting to his innocence, the Court found his testimony wholly incredible.[2] Counsel may well have reasoned that placing Fletcher on the stand would not serve Fletcher's best interests. At the same time, counsel may have tactically reasoned that placing Fletcher on the stand would detract from counsel's ability to present a more viable defense to the jury.

---

[2] "It defies experience to think that these five, six, seven or eight people would write substantially similar letter sua sponte. I don't believe it, simply don't believe it. . . . I find as a fact . . . Fletcher . . . contacted these people . . . ." United States v. Fletcher, No. 05-179, at ¶197 (Jan. 6, 2005).

Ultimately, however, the inquiry is moot because Fletcher has not indicated how the lack of his testimony prejudiced his defense.  See Terry, 366 F.3d at 316 (holding Strickland's prejudice prong unsatisfied when defendant asserts only that he "would have denied . . . claim[s] and impeached [witnesses'] credibility, [and] omits any details that explain why the district court would have given his claims any weight").  Absent any claim either that Fletcher was unaware of his right to testify or that counsel coerced or exerted pressure to prevent Fletcher from testifying, defense counsel's conduct cannot rise to the level of constitutionally deficiency.

**D.**

Fletcher next claims his constitutional and common law rights were violated when, in his absence, the Court responded to a note passed to the Court from the jury.  The communication, however, was merely ministerial and had no bearing on Fletcher's ability to defend himself, so the conduct of trial and appellate counsel was not constitutionally deficient.

Fletcher  refers to a note passed from the jury stating that the transcript book of intercepted phone calls was missing from the evidence.  The Court, after meeting with counsel, sent a note back stating, "Here are the transcripts, please read Jury Instruction Number 17," to which the jury replied, "Instruction 17 read.  We seem to be missing one of the books." (Trial Trans. 96 ¶¶ 13-17).  Fletcher claims this was a "critical stage" of trial at which his presence was therefore required, and that  trial counsel was ineffective for failing to object to the Court's communication with the jury.  He argues that appellate counsel was similarly ineffective for failing "to object and raise" this issue on appeal.  The Court disagrees.

The Due Process Clause of the Fifth Amendment and the Confrontation Clause of the Sixth Amendment guarantee a defendant charged with a felony the right to be present at all

8

critical stages of his trial.  See Snyder v. Massachusetts, 291 U.S. 97 (1934) (Fifth Amendment);

Illinois v. Allen, 397 U.S. 337, 338 (1970) (Sixth Amendment); Fed. R. Crim. P. 43 (codifying

the constitutional right).  However, a defendant's right to be present at all critical stages of trial is

not absolute.  See United States v. Tipton, 90 F.3d 861, 864 (4th Cir. 1996).  The right exists

only "to the extent that a fair and just hearing would be thwarted by [the defendant's] absence"; it

is limited to "those circumstances where a defendant's presence has a relation, reasonably

substantial, to the fullness of his opportunity to defend himself."  Id at 864-65 (citing Snyder, 291

U.S. at 105-08).  "The right is thus by definition limited to those circumstances in which absence

has a 'prejudicial impact' on a defendant's opportunity effectively to assist in his defense."  Id. at

875.  "Prejudicial impact" does not exist unless the defendant's presence "demonstrably would

have made some difference."  Id. at 876; see Snyder, 291 U.S. at 106-07 (finding no

violation–thus no prejudice possible–"when [defendant's] presence would be useless, or the

benefit but a shadow"); Larson v. Tansy, 911 F.2d 392, 395 (10th Cir. 1990) (holding a

defendant has no due process right to be present at a jury instruction conference because "the jury

. . . conference traditionally encompasses purely legal issues, and, as such, it will be a rare case

where a defendant can establish that his presence was essential to his opportunity to present his

defense").

        Here, the jury communication at issue cannot be characterized as a critical stage of

Defendant's trial, and his absence was not in any sense prejudicial.  Far from making "some

difference" in the proceedings, Fletcher's presence during this written exchange between the

deliberating jury and the Court would have made no difference at all.  The communication was

entirely secretarial.  Fletcher's absence in no way detracted from his ability to defend himself.

Consequently, trial counsel was not ineffective for failing to object on the grounds of this absence during this de minimus exchange, nor was appellate counsel constitutionally deficient for failing to raise the claim on appeal.

**E.**

Fletcher next claims trial counsel was ineffective for failing to raise a hearsay objection to the Government's introduction of an "unintelligible" audio recording. The recording in question apparently evidenced a transaction between Fletcher and an informant in which the informant was engaged in purchasing narcotics from Fletcher with a check that was later laundered by Fletcher. While it is not entirely clear from Fletcher's Motion, presumably he means to argue that had the recorded evidence not been introduced, he would have been acquitted of the money laundering charges.

The Government's first line contention is of course correct insofar as identification of Fletcher's voice would render any statements by him admissions, thus non-hearsay. But absent a showing that counsel's conduct was prejudicial to Fletcher's case, this inquiry is entirely academic. Fletcher has not demonstrated to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The audio recording was but one piece of evidence the Government introduced to prove Fletcher's illicit money laundering transactions, hardly the linchpin of the Government's case. In addition to the recording, the Government introduced the live testimony of Agent Riordan, who testified as to the details of the recorded transaction. Furthermore, Brenda Fletcher, Fletcher's wife,  specifically testified as to Fletcher's money laundering transactions. Thus, even had the audio recording been excluded from evidence, it remains highly unlikely that

10

any juror would have found that the illicit activity Fletcher was charged with did not occur. Absent any showing of prejudice, Fletcher cannot satisfy Strickland, and further inquiry is unnecessary. Strickland, 466 U.S. at 668.

For these reasons, Fletcher's claim that appellate counsel's assistance was constitutionally deficient for failing to raise the audio recording hearsay issue on appeal is also meritless. See, e.g., Jones v. Barnes, 463 U.S. 745, 752 (1993) (highlighting "the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review" because "[t]he effect of adding weak arguments will be to dilute the force of the stronger ones") (internal citations omitted).

## F.

Finally, Fletcher claims trial counsel's assistance was ineffective for failing to impeach the Government's witnesses. Specifically, he claims Detective Hallinger and Brenda Fletcher, his wife, lied on the stand and trial counsel should have impeached both individuals with evidence of the perjury Fletcher supplied to counsel. However, yet again Fletcher is all sail and no anchor. It is true that "unless some cogent tactical or other consideration justifie[d]" withholding exculpatory evidence an attorney's failure to present such evidence is likely deficient. Murray, 952 F.2d at 1476. Other than stating that the check presented by the Government as evidence of his money laundering was never deposited into his account, as implied by the prosecution, Fletcher does not specify what his impeachment evidence might have been. Broadside references to trial exhibits, excerpts of testimony, and unsupported allegations attacking the witnesses' credibility do not make the grade. The Court has been offered no additional, credible information that counsel might have used to impeach the witnesses.

11

Here, too, the ultimate dispositive issue is one of prejudice.  Fletcher must show that "the result of the proceeding would have been different had . . . the possible significance of the facially exculpatory evidence been recognized, then verified, and the evidence introduced by counsel at trial."  Id. at 1477.  The deposited check was but one item in a compendium of damning evidence–e.g., numerous bank records, audio recordings, and law enforcement and co-conspirator testimony.  It simply cannot be said that any impeaching evidence as to the check would undermine the Court's confidence in the verdict.  See Murray, 4 F.3d at 1290 (holding that Strickland requires "a reasonable probability, not just a remote possibility, that introduction of this evidence would have altered the result of his trial").

## IV.

8i9uFor the foregoing reasons, the Court **DENIES** Fletcher's Motion to Vacate, Set Aside, or Correct Sentence under 28. U.S.C. § 2255.

A separate Order will **ISSUE**.

April 2, 2009

/s/

**PETER J. MESSITTE**

**UNITED STATES DISTRICT JUDGE**